105 Cal.Rptr.2d 32 (2001)
87 Cal.App.4th 631
William J. RANDALL, Plaintiff and Appellant,
v.
Jenny SCOVIS et al., Defendants and Respondents.
No. D036508.
Court of Appeal, Fourth District, Division One.
March 5, 2001.
Rehearing Denied March 22, 2001.
Review Denied June 13, 2001.[*]
*35 Joan E. Hewitt, Burbank, for Plaintiff and Appellant.
Law Firm of Kim Scovis and Jenny Scovis, Thousand Oaks, for Defendants and Respondents Jenny Scovis and Scovis and Scovis.
Howard, Moss, Loveder, Strickroth & Walker, Riverside, and Michael J. Strickroth, Santa Ana, for Defendants and Respondents Jesse Lopez and Janice Lopez.
HUFFMAN, Acting P.J.
We review a judgment of dismissal entered in favor of defendants Jenny Scovis, Scovis and Scovis, a law partnership, and defendants Jesse Lopez and Janice Cavilla Lopez.[1] The judgment was granted on the theory that the litigation privilege of Civil Code[2] section 47, subdivision (b) barred all causes of action brought by plaintiff William J. Randall, alleging unauthorized possession, dissemination and disclosure of a criminal record in a guardianship proceeding, and fraudulent alteration of the record. We hold Randall's cause of action for invasion of a constitutional right to privacy for the unauthorized possession and dissemination of confidential criminal records, and his cause of action for invasion of a statutory right to privacy by the unauthorized possession and disclosure of that information, survive the application of the litigation privilege. (Cal. Const., art. I, § 1; § 1798.53.) Accordingly, we reverse the defense judgment as to those causes of action only, while finding the remaining tort claims are barred.

FACTUAL AND PROCEDURAL BACKGROUND
We state the facts as alleged in Randall's complaint. In 1995, during guardianship proceedings concerning Randall's grandson, both Randall and the Lopezes were seeking custody of the boy. During the proceedings, Scovis, the Lopezes' counsel, filed an exhibit with the court, attached to a declaration, that contained information regarding an old conviction of Randall, compiled by the State of California, Department of Justice, Bureau of Criminal Identification and Investigation (CII). Access to CII information is strictly regulated. Unauthorized possession and dissemination of this information subject the violator to criminal and civil penalties. (Pen.Code, §§ 11140 et seq., 13300 et seq.) With knowledge of these restrictions, the Lopezes and Scovis gained unauthorized access to the CII information, altered some of it, and sent a forged CII record in a letter to various individuals involved in the proceedings, including a psychologist, social worker, and a lawyer.[3]
*36 Randall sued Scovis and the Lopezes alleging a statutory cause of action for invasion of privacy under section 1798.53, intentional infliction of emotional distress, negligence, and unlawful invasion of privacy under the California Constitution. (Cal. Const., art. I, § 1.) Both the general and specific allegations of this cause of action alleged that Scovis and the Lopezes obtained unauthorized access to information maintained by the CII pertaining to Randall's criminal conviction, in violation of Penal Code sections 11143 and 13300.[4]
Both Scovis and the Lopezes filed a general demurrer to all four causes of action. The superior court sustained the demurrers without leave to amend as to the constitutional invasion of privacy claim based upon the litigation privilege. However, the court overruled the demurrers as to the other three causes of action as it believed they all related to section 1798.53, to which the privilege did not apply.
Scovis and the Lopezes then filed motions for judgment on the pleadings based on newly presented case law that applied arguably analogous free press defenses to section 1798.53. (Alim v. Superior Court (1986) 185 Cal.App.3d 144, 229 Cal.Rptr. 599 (Alim ).)[5] The trial court construed Randall's negligence and intentional infliction of emotional distress claims as necessarily linked to his section 1798.53 claim. It granted the Lopezes' and Scovis's motions for judgment on the pleadings as to these three causes of action based on the holding of Alim, supra, 185 Cal.App.3d 144, 229 Cal.Rptr. 599. Judgment was entered dismissing Randall's complaint.[6]

DISCUSSION
On appeal, we review the trial court's decision to grant or deny a motion for judgment on the pleadings under the same standard as the decision to sustain or overrule a demurrer. (Boccato v. City of Hermosa Beach (1994) 29 Cal.App.4th 1797, 1803-1804, 35 Cal.Rptr.2d 282.) Our standard of review of both portions of the ruling is de novo, i.e., we exercise our independent judgment about whether, assuming the truth of the pleadings, the complaint states its causes of action. (Ibid.)

I

The Litigation Privilege
The litigation privilege is intended to immunize any publication or broadcast made in a judicial proceeding. (§ 47, subd. (b).) The privilege has been given broad application to further the public policies it is designed to serve. It affords *37 litigants freedom of access to the courts and open channels of communication by absolutely protecting them from derivative litigation based on communicative acts during judicial proceedings. (Silberg v. Anderson (1990) 50 Cal.3d 205, 211, 213-216, 266 Cal.Rptr. 638, 786 P.2d 365 (Silberg ).) The privilege applies to any communication (1) made in a judicial or quasi-judicial proceeding, (2) by litigants or other participants authorized by law, in or out of court, (3) to achieve the objects of litigation and (4) having some connection or logical relation to the action. (Id. at p. 212, 266 Cal.Rptr. 638, 786 P.2d 365.)
In Kimmel v. Goland (1990) 51 Cal.3d 202, 271 Cal.Rptr. 191, 793 P.2d 524 (Kimmel ), our Supreme Court clarified the scope of the litigation privilege. It noted an implicit distinction between an injury arising from noncommunicative conduct, such as eavesdropping in violation of penal laws, and a communicative act, such as testifying to the conversation heard by eavesdropping. (Kimmel, supra, 51 Cal.3d at p. 211, 271 Cal.Rptr. 191, 793 P.2d 524.) The court then held the litigation privilege did not apply to bar causes of action arising from noncommunicative conduct. (Ibid.)
In reaching its conclusions in Kimmel, supra, 51 Cal.3d 202, 271 Cal. Rptr. 191, 793 P.2d 524 the Supreme Court noted that the litigation privilege applies to virtually all torts except malicious prosecution. (Id. at p. 209, 271 Cal.Rptr. 191, 793 P.2d 524.) For example, the privilege applies to the tort of invasion of privacy. (Ibid.; see Wise v. Thrifty Pay less, Inc. (2000) 83 Cal.App.4th 1296, 1303, 100 Cal. Rptr.2d 437.) The privilege also applies to statutory causes of action. (Ribas v. Clark (1985) 38 Cal.3d 355, 364-365, 212 Cal. Rptr. 143, 696 P.2d 637 (Ribas ).)
As explained in Shulman v. Group W Productions, Inc. (1998) 18 Cal.4th 200, 227, 74 Cal.Rptr.2d 843, 955 P.2d 469 (Shulman ), in addition to a tort cause of action for invasion of privacy, which can be pled on a number of different factual bases, there is also a separate constitutionally based cause of action for invasion of privacy. (Cal. Const., art. I, § 1; Shulman, supra, 18 Cal.4th at pp. 214, fn. 4, 227, 74 Cal.Rptr.2d 843, 955 P.2d 469.) The Supreme Court stated that the two sources of protection for privacy, common law and the state Constitution, are not unrelated. Specifically, the court explained that none of its prior decisions suggested that "the conceptual framework developed for resolving privacy claims under the California Constitution was intended to supplant the common law tort analysis or preclude its independent development." (Shulman, supra, 18 Cal.4th at p. 227, 74 Cal.Rptr.2d 843, 955 P.2d 469.)
In the case before us, Randall has pled both a constitutional and a statutory basis for redress for alleged invasion of his right of privacy. We discuss these separately with regard to the application of litigation privilege rules, and then turn to Randall's tort claims.

II

Constitutional Right to Privacy
The California Constitution, as amended by the voters in 1972, protects the right of privacy of California citizens. (Cal. Const., art. I, § 1.) This "inalienable" right encompasses privacy protections broader than those recognized by the federal constitution. (American Academy of Pediatrics v. Lungren (1997) 16 Cal.4th 307, 327-328, 66 Cal.Rptr.2d 210, 940 P.2d 797.) The amendment gives rise to a cause of action for invasion of privacy against either the state or private individuals. (See White v. Davis (1975) 13 Cal.3d 757, 775, 120 Cal.Rptr. 94, 533 P.2d 222; Chico Feminist Women's Health Center v. Scully (1989) 208 Cal.App.3d 230, 242, 256 Cal.Rptr. 194.) The elements of the claim are "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (Hill v. National Collegiate Athletic Assn. (1994) 7 Cal.4th 1, 39-0, 26 Cal.Rptr.2d 834, 865 P.2d 633.) Privacy *38 interests are recognized in maintaining a reputation as a law abiding person, where there is no sufficient justification for publicizing old criminal information about a person. (Shulman, supra, 18 Cal.4th at pp. 219-222, 74 Cal.Rptr.2d 843, 955 P.2d 469.)
We address whether the litigation privilege bars Randall's state constitutional invasion of privacy claim for the alleged unauthorized acts of obtaining possession of, disseminating, and altering official documents showing Randall's criminal history.[7] Randall cites Susan S., supra, 55 Cal.App.4th 1290, 67 Cal.Rptr.2d 42 to support his argument the litigation privilege does not protect the conduct of the Lopezes and Scovis. In Susan S., the plaintiff sought recovery, in part, for an unconstitutional invasion of privacy arising from a defense attorney's unauthorized reading and disseminating of confidential mental health records. During a criminal prosecution, a defense attorney mistakenly received plaintiffs mental health records. In preparing the criminal defense of his client who was charged with the sexual battery of the plaintiff, the attorney read and disseminated the plaintiffs mental health records, despite knowledge of the private and confidential nature of the documents. In her complaint, plaintiff claimed the attorney's unlawful conduct circumvented established discovery procedures and invaded her constitutional right to privacy. The reviewing court held an invasion of privacy occurred and turned to Kimmel, supra, 51 Cal.3d 202, 271 Cal. Rptr. 191, 793 P.2d 524 for guidance in determining whether the litigation privilege barred the claim.
Drawing on the principles of Kimmel, supra, 51 Cal.3d 202, 271 Cal.Rptr. 191, 793 P.2d 524, the Susan S. court walked a fine line for distinguishing communicative acts and noncommunicative conduct. The court concluded plaintiffs constitutional claim for invasion of privacy arose from the conduct of reading and disseminating the confidential records, not from the publication or broadcast of the information in those records. Therefore, the conduct fell outside the scope of the litigation privilege. (Susan S., supra, 55 Cal.App.4th at pp. 1299-1301, 67 Cal.Rptr.2d 42.)
In the recent case of Jeffrey H. v. Imai, Tadlock & Keeney (2000) 85 Cal.App.4th 345, 357, 101 Cal.Rptr.2d 916 (Jeffrey H.), the court explained that when considering a claim of a constitutional right to privacy under the California Constitution, privacy interests will not be considered absolute. Although there is language in Silberg, supra, 50 Cal.3d at p. 215, 266 Cal.Rptr. 638, 786 P.2d 365, describing the privilege as being "absolute in nature," a balancing of interests test is still appropriate in the court's view, because "Silberg did not consider the application of the privilege to a constitutional cause of action but rather cited Ribas, supra, 38 Cal.3d 355, 212 Cal. Rptr. 143, 696 P.2d 637 as immunizing defendants from `tort liability based on theories of ... [invasion of privacy]....' [Citation.]" (Jeffrey H., supra, 85 Cal. App.4th at pp. 359-360, 101 Cal.Rptr.2d 916.) Thus, the court noted that the California Constitution, article I, section 1, has been construed "as calling for a balancing of the privacy interest against competing interests to determine if the right may be invaded." (Jeffrey H., supra, 85 Cal. App.4th at p. 357, 101 Cal.Rptr.2d 916.) The court relied on Hill v. National Collegiate Athletic Assn., supra, 7 Cal.4th 1, 34-37, 26 Cal.Rptr.2d 834, 865 P.2d 633, to state that some decisions "use `compelling interest' language; others appear to rely on balancing tests giving less intense scrutiny to nonprivacy interests." (Id. at p. 34, 26 Cal.Rptr.2d 834, 865 P.2d 633.)
*39 In Jeffrey H., supra, 85 Cal.App.4th 345, 360, 101 Cal.Rptr.2d 916, the court concluded that "a balancing of interest analysis governs application of the litigation privilege to a cause of action for invasion of privacy under California Constitution, article I, section 1." Where a disclosure of protected information is made pursuant to a judicial determination, the disclosure may be proper; however, "in the absence of a judicial ruling, the constitutional right to privacy may sometimes outweigh the policies underlying the privilege." (Jeffrey H, supra, 85 Cal.App.4th at p. 360, 101 Cal.Rptr.2d 916.) The court held a demurrer should not have been sustained on litigation privilege grounds to the plaintiffs constitutional invasion of privacy cause of action. (Id. at pp. 360-361, 101 Cal.Rptr.2d 916.)
Based on all the above authorities, the conclusion appears inevitable that although the litigation privilege clearly applies to the invasion of privacy tort, it may only apply to a constitutionally-based invasion of privacy cause of action if a balancing test similar to that set forth in Jeffrey H, supra, 85 Cal.App.4th 345, 101 Cal. Rptr.2d 916 is satisfied. In the case before us, we believe that this balancing test need only be used to a limited extent, to allow the standards developed in other litigation privilege cases to be applied to these claims. The key issue here is the conduct/communication approach set out in Kimmel, supra, 51 Cal.3d 202, 271 Cal. Rptr. 191, 793 P.2d 524. Randall alleges Scovis and the Lopezes obtained, altered and disseminated private information to various individuals involved in the guardianship proceeding with the intent to vex, injure and annoy Randall. As a result of this conduct, Randall suffered humiliation, mental anguish, and emotional and physical distress. These allegations satisfy the required elements of a constitutional privacy claim: a legally protected privacy interest, a reasonable expectation of privacy in the circumstances; and conduct by defendants that constitutes a serious invasion of privacy. (Hill v. National Collegiate Athletic Assn., supra, 7 Cal.4th at pp. 39-40, 26 Cal.Rptr.2d 834, 865 P.2d 633.)[8]
Randall's invasion of privacy cause of action accrued at the time of the invasive conduct, not when the information was later communicated to others. (Kimmel, supra, 51 Cal.3d at p. 212, 271 Cal.Rptr. 191, 793 P.2d 524; Ribas, supra, 38 Cal.3d at p. 365, 212 Cal.Rptr. 143, 696 P.2d 637; Susan S., supra, 55 Cal.App.4th at pp. 1298-1299, 67 Cal.Rptr.2d 42.) This alleged injury derives from the conduct of the defendants toward him, not from their communications to others of the material illegally acquired. Thus, applying the principles of Kimmel and Susan S., we ` conclude Randall's constitutional invasion of privacy claim, based on the Lopezes' and Scovis's unlawful conduct in obtaining possession of, disseminating and altering the documents showing Randall's criminal history, survives a litigation privilege defense, and the matter must be allowed to proceed beyond the pleadings stage.

III

Statutory Cause of Action: Section 1798.53
In his complaint, Randall separately alleges Scovis's and the Lopezes' conduct violated section 1798.53, which creates a statutory invasion of privacy claim. The trial court also construed Randall's negligence and intentional infliction of emotional distress claims as necessarily linked to his section 1798.53 claim. It granted the Lopezes' and Scovis's motion for judgment on the pleadings as to these three causes of action based on the holding of Alim, supra, 185 Cal.App.3d 144, 229 Cal.Rptr. 599. It reasoned that this statutory claim must be subject to special defenses such as the litigation privilege.
*40 Section 1798.53 is part of the Information Practices Act of 1977 (§§ 1798-1798.78), and is intended to protect one's right to privacy from indiscriminate collection and dissemination of information maintained by governmental agencies. (§§ 1798.1, 1798.3; Anti-Defamation League of B'nai B'rith v. Superior Court (1998) 67 Cal.App.4th 1072, 1078-1079, 79 Cal.Rptr.2d 597.) "The statute was designed by the Legislature to prevent misuse of the increasing amount of information about citizens which government agencies amass in the course of their multifarious activities, the disclosure of which could be embarrassing or otherwise prejudicial to individuals or organizations." (Ibid.) The disclosure of such information by "any [natural] person," corporation, firm, etc., will subject him or her to a civil action for invasion of privacy. (§§ 1798.3, subd. (f); 1798.53.)
Section 1798.1 makes legislative findings and declarations that specify the right to privacy which is protected by the act stems from article I, section 1 of the California Constitution, as well as the United States Constitution. This statutory cause of action is nonexclusive and is in addition to all other rights and causes of action for invasion of privacy that inhere in section 1, article 1 of the California Constitution. (§ 1798.53.)[9]
In Alim, supra, 185 Cal.App.3d 144, 229 Cal.Rptr. 599, the appellate court upheld the application of free press defenses that are available in common law actions for invasion of privacy to another form of action, one based on section 1798.53. The court reasoned that because the section characterizes the action it creates as one for invasion of privacy, then "[t]hat classification carries with it, in our view, the usual conditions which attach to the maintenance of such actions, including the special defenses that pertain to the press." (Alim, supra, 185 Cal.App.3d at p. 150, 229 Cal. Rptr. 599.) The court did not believe that the nonexclusive and supplemental nature of the statutory cause of action made any difference in the analysis or prevented the application of the usual special defenses allowed to the press. (Ibid.)
Here, the trial court extended Alim, supra, 185 Cal.App.3d 144, 229 Cal.Rptr. 599 to find that another common defense, the litigation privilege, would apply to bar an invasion of privacy claim that was brought under section 1798.53. It appears no published case has specifically determined whether other policy-based defenses or privileges, aside from those associated with the press, may also apply to section 1798.53. The salient point is that a section 1798.53 claim essentially equates with or is supplemental to a constitutional invasion of privacy claim. (Ibid.; § 1798.1.) We agree with the court in Alim, supra, 185 Cal. App.3d 144, 229 Cal.Rptr. 599 that the same considerations applicable in the constitutional context with respect to privileges should also apply to this privacy cause of action as codified. However, in this case, these considerations lead to a different result. In Alim, the Court of Appeal applied the actual malice doctrine to decide if the free press defense barred *41 the plaintiffs privacy claim. (New York Times v. Sullivan (1964) 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.) On that record, the plaintiff could not overcome the defense. (Alim, supra, 185 Cal.App.3d at pp. 152-154, 229 Cal.Rptr. 599.)
Here too, we must conduct the standard test for analyzing the applicability of the litigation privilege: Have all its elements been demonstrated? Was there a communication (1) made in a judicial or quasijudicial proceeding, (2) by litigants or other participants authorized by law, in or out of court, (3) to achieve the objects of litigation and (4) having some connection or logical relation to the action? (Silberg, supra, 50 Cal.3d at p. 212, 266 Cal.Rptr. 638, 786 P.2d 365.) The litigation privilege analysis inquires a conduct/communication distinction which is clearly applicable here in this invasion of privacy context, whether the claim is constitutionally or statutorily based.
Accordingly, as set out in part II, ante, to the same extent the defendants' alleged wrongdoing was conduct, rather than "communicative" in nature, the litigation privilege does not apply. (See Ribas, supra, 38 Cal.3d at p. 365, 212 Cal.Rptr. 143, 696 P.2d 637; Jeffrey H., supra, 85 Cal. App.4th 345, 360, fn. 2, 101 Cal.Rptr.2d 916 [no bar of the litigation privilege to a right to recover a compensatory civil penalty under Pen.Code, § 637.2].) In both the constitutional and statutory forms of the claim, a right to redress for violation of the privacy right accrues at the time of the invasive conduct. (Ribas, supra, 38 Cal.3d at p. 365, 212 Cal.Rptr. 143, 696 P.2d 637.) The policies promoted by the litigation privilege have no application in that context.
Moreover, to the extent the rule of Alim, supra, 185 Cal.App.3d 144, 229 Cal. Rptr. 599, was expanded here to apply the litigation privilege to a statutory invasion of privacy cause of action, a statutory conundrum was created. Specifically, any application of the litigation privilege will strip section 1798.53 of meaning. Section 1798.53 creates a civil cause of action for the disclosure of specified information, even though the litigation privilege might otherwise preclude redress for such disclosures under certain circumstances. This apparent statutory conflict requires a determination of how best to effectuate the intent of the Legislature when these two statutes are read together.
To avoid this conflict in a parallel situation, a reviewing court denied the defense of immunity under the litigation privilege in Begier v. Strom (1996) 46 Cal.App.4th 877, 54 Cal.Rptr.2d 158. There the court stated, "the Child Abuse and Neglect Reporting Act [Pen.Code, § 11164 et seq.] [was] a legislative effort to balance, on the one hand, the public interest in ferreting out cases of child abuse so that the child victims can be protected from harm, and on the other hand, the policy of protecting the reputations of those who might be falsely accused. [Citation.] The Legislature has struck that balance by withholding immunity from those who knowingly make false reports of child abuse. If we were to hold the same conduct privileged under Civil Code section 47, we would essentially nullify the Legislature's determination that liability should attach. Our task is to read statutes with reference to the whole system of law and to avoid rendering a statute meaningless and ineffective." (Begier v. Strom, supra, 46 Cal. App.4th at p. 885, 54 Cal.Rptr.2d 158, fn. omitted.)
This rationale equally applies to section 1798.53. The Legislature expressly provided for civil liability against those who intentionally and knowingly disclose certain protected personal information, and the litigation privilege should not be used as a shield against such liability. For this reason, we hold the litigation privilege of section 47, subdivision (b) will not immunize a defendant otherwise liable under section 1798.53. Therefore, Randall's section 1798.53 claim for invasion of privacy should have survived this motion for judgment on the pleadings that was premised *42 solely on the application of the litigation privilege.[10]

IV

Negligence and Intentional Infliction of Emotional Distress
The litigation privilege broadly applies to all common law torts, with the exception of malicious prosecution. (Silberg, supra, 50 Cal.3d at pp. 212, 215-216, 266 Cal.Rptr. 638, 786 P.2d 365.) Randall's remaining claims, which rest upon the common law torts of negligence and intentional infliction of emotional distress, are barred. Both these claims stem from communicative acts protected by the litigation privilege. Randall's complaint alleges the Lopezes and Scovis acted negligently when they disclosed personal and confidential information to the court in the form of an exhibit and to individuals involved in the guardianship proceeding. Such disclosures, as they relate to judicial proceedings, are clearly communicative in nature.
Further, Randall based his intentional infliction of emotional distress claim on allegations that the conduct of the Lopezes and Scovis caused him to suffer humiliation, mental anguish, and emotional and physical distress. It was the communication of this information during the guardianship proceedings to the court and to involved individuals that apprised Randall of the unlawful conduct which caused him potential emotional harm. (Susan S., supra, 55 Cal.App.4th at p. 1304, 67 Cal. Rptr.2d 42; Jeffrey H., supra, 85 Cal. App.4th at p. 361, 101 Cal.Rptr.2d 916.) Therefore, these communicative actions fall squarely within the protection of the litigation privilege and the court properly barred Randall's claims premised upon them.

DISPOSITION
The judgment is reversed as to the fourth cause of action for constitutional invasion of privacy and the first cause of action for section 1798.53 invasion of privacy. In all other respects, the judgment is affirmed. Each party is to bear its costs on appeal.
NARES, J., and O'ROURKE, J., concur.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).
[1] This opinion collectively refers to Jenny Scovis and Scovis and Scovis as "Scovis" and Jesse Lopez and Janice Cavilla Lopez as "the Lopezes." Scovis represented the Lopezes in a guardianship proceeding in which Randall was an opposing party. Janice Lopez is Randall's former wife.
[2] All statutory references are to the Civil Code unless otherwise specified.
[3] Randall asserts he suffered a misdemeanor conviction 25 years ago. The allegedly forged document "creat[ed] the appearance [Randall] had a history of felony convictions."
[4] Penal Code section 11143 (State Summary Criminal History Information) and Penal Code section 13304 (Local Summary Criminal History Information) both state: "Any person, except those specifically referred to in Section 1070 of the Evidence Code, who, knowing he is not authorized by law to receive a record or information obtained from a record, knowingly buys, receives, or possesses the record or information is guilty of a misdemeanor."
[5] Randall asserts the 1994 amendment to Code of Civil Procedure section 438, subdivision (g)(1), a restriction on statutory motions for judgment on the pleadings not based on a change in the law, precluded Scovis and the Lopezes from raising Alim, supra, 185 Cal. App.3d 144, 229 Cal.Rptr. 599 in their motion for judgment on the pleadings. This argument lacks merit. The motion was nonstatutory and therefore the limitations of section 438 need not be applied. In any case, review of a judgment on the pleadings is de novo. (Lance Camper Manufacturing Co. v. Republic Indemnity Co. (1996) 44 Cal.App.4th 194, 198, 51 Cal.Rptr.2d 622.)
[6] The judgment from which Randall appeals fails to dispose of all four causes of action. It refers only to the three causes of action dismissed by the motion for judgment on the pleadings and not to the cause of action previously dismissed after the general demurrer. However, the ruling on demurrer was effectively a final one. Under such circumstances, an appellate court can deem the judgment amended to include the omitted cause of action. (Molien v. Kaiser Foundation Hospitals (1980) 27 Cal.3d 916, 920-921, 167 Cal.Rptr. 831, 616 P.2d 813.)
[7] Randall's complaint does not specifically allege his claim arises from the conduct of reading his private criminal history. However, he does allege the Lopezes and Scovis were unauthorized to possess, alter, and disseminate this information. We can imply the conduct of reading from these allegations. (See Susan S. v. Israels (1997) 55 Cal.App.4th 1290, 1298-1299, 67 Cal.Rptr.2d 42 (Susan S.).)
[8] As will be explained in part III, post, we will apply the same conduct/ communication analysis as to the statutorily-based constitutional invasion of privacy claim asserted here.
[9] Section 1798.53 states in full: "Any person, other than an employee of the state or of a local government agency acting solely in his or her official capacity, who intentionally discloses information, not otherwise public, which they know or should reasonably know was obtained from personal information maintained by a state agency or from `records' within a `system of records' (as these terms are defined in the Federal Privacy Act of 1974 (P.L. 93-579; 5 U.S.C. 552a)) maintained by a federal government agency, shall be subject to a civil action, for invasion of privacy, by the individual to whom the information pertains. [¶] In any successful action brought under this section, the complainant, in addition to any special or general damages awarded, shall be awarded a minimum of two thousand five hundred dollars ($2,500) in exemplary damages as well as attorney's fees and other litigation costs reasonably incurred in the suit. [¶] The right, remedy, and cause of action set forth in this section shall be nonexclusive and is in addition to all other rights, remedies, and causes of action for invasion of privacy, inherent in Section 1 of Article I of the California Constitution." (Emphasis added.)
[10] We express no opinion as to the merits of Randall's constitutional and statutory invasion of privacy claims or whether his complaint is sufficient to survive other pretrial motions. In this decision, we conclude only that the litigation privilege does not, as a matter of law, shield the Lopezes and Scovis from liability for these causes of action.